IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CHARMANE JACKSON, Individually | § | |
| and as Representative and Heir of the | § | |
| Estate of CHANDLER HUGH JACKSON | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 4:06CV237 |
| U.S. KIDS GOLF, LLC, FORMOSA | § | |
| GOLF CORPORATION d/b/a SW GOLF | § | |
| FEMCO STEEL CO., LTD, AND | § | |
| BOSS INTERNATIONAL, LLC d/b/a | § | |
| FEMCO STEEL TECHNOLOGY/FST/ | § | |
| FEMCO, LCC, | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

Now before the Court are Defendants/Third Party Defendants FEMCO Steel Co. and Far East Machinery Co.'s Motion for Summary Judgment Against Plaintiffs (Dkt. 154), Defendant/Third Party Plaintiff U.S. Kids Golf, LLC's Motion for Summary Judgment Against Plaintiffs (Dkt. 156), and Defendant/Third Party Plaintiff U.S. Kids Golf, L.L.C.'s Supplemental Motion for Summary Judgment Against Plaintiffs (Dkt 198). Having reviewed the motions, response, and applicable authorities, the Court finds that they should be GRANTED in part and DENIED in part.

**MOTION FOR SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 7 31 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant's motion "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond

the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

## OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

Prior to analyzing the parties' summary judgment arguments, the Court will address Defendants' objections to Plaintiffs' summary judgment evidence. First, the Court notes that the majority of Defendants' objections are blanket objections that fail to specify the exact evidence or portions of evidence Defendants find objectionable. For these reasons alone, most of the objections should be overruled. Nonetheless, to the extent possible, the Court will address the purported merits of Defendants' objections.

Defendants' relevancy objections to "Plaintiffs' summary judgment proof in its entirety" are overruled. Not only are the objections not explained, the Court is able to determine relevancy at this summary judgment phase.

Defendants' objections to Plaintiffs' expert reports on the basis that they are hearsay are overruled. Defendants do not offer any further argument regarding their objections. With the exception of Exhibit "P" which the Court finds to be incomplete, Plaintiff attached each of the referenced reports to sworn affidavits. Each of the affidavits was sworn to by the author of the subject report, and each of the affidavits references the reports within its sworn contents. Thus, for

purposes of these summary judgment proceedings, and without more detailed argument from Defendants as to why they should not be considered by the Court, Defendants' objections are overruled as to all exhibits other than Exhibit "P." *See, e.g., Straus v. DVC Worldwide, Inc.*, 484 F. Supp.2d 620, 633 (S.D. Tex. 2007). The objection to Exhibit "P" is sustained, and it has not been considered by the Court in this summary judgment analysis.

Defendants have also objected to the Affidavit of Craig Jerner because it contains "newly formed opinions." The Court has already ruled on the propriety of such supplementation (*see* Dkt. 249). Therefore, those objections are overruled.

Next, Defendants argue that Gary Nelson's expert affidavit is conclusory and adds new undisclosed opinions. The objections are overruled. First, Defendants argue that Nelson's opinions regarding design defect have not been disclosed, however, the Court finds that any expert designation for Nelson to offer safety engineering opinions could encompass design defects, and without more argument from Defendants, the Court declines to strike the evidence on this basis. Moreover, as the Court has noted in its prior order, most of Defendants' concerns with Nelson's testimony are more appropriate matters for cross-examination, and, during these summary judgment proceedings, the Court can determine whether a genuine issue of *material* fact has been created by the expert opinion.

The Court also overrules Defendants' objections that Paul France's expert affidavit provides no evidence of causation and includes newly formed opinions. Again, the Court has already addressed many of Defendants' concerns with France's testimony and finds them more appropriate

for attack on cross-examination (*see* Dkt. 249). Defendants' complaints as to France's causation testimony may go to the credibility of the expert testimony, but, for these summary judgment proceedings will not exclude it. *See, e.g., Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 354 (5th Cir. 2007) ("Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may 'go to the weight, not the admissibility' of the expert's testimony.").

Defendants' objection to the un-authenticated copies of the Consumer Product Safety Commissions Guidelines is sustained, and that evidence will not be considered at the summary judgment phase.

## SUMMARY JUDGMENT ANALYSIS

Plaintiffs have asserted eight causes of action here: (1) strict liability for an allegedly defective product; (2) negligence; (3) breach of implied warranty of merchantability: (4) breach of implied warranty of fitness for a particular purpose; (5) breach of express warranty; (6) misrepresentation; (7) violation of the Texas Hazardous Substances Act; and (8) a bystander cause of action. Defendants argue that they are entitled to summary judgment as to all of these claims because Plaintiffs have failed to show that the design of the USKG gold shaft was a proximate or producing cause of Chandler Jackson's death. However, having reviewed the summary judgment evidence before it, the Court finds that Plaintiff has created a genuine issue of material fact as to causation.

Defendants repeatedly argue that Plaintiffs cannot survive summary judgment because "no one knows what Chandler Jackson was doing to cause the Golf Shaft to break." Dkt. 183 at 2. Plaintiffs, as nonmovants, are not required to *prove* causation at the summary judgment phase. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 747 (5th Cir. 1989). What is required of them, in order to survive summary judgment, is to create a genuine issue of material fact as to the causation, and all other elements, of their claims. *Id.*

In Texas, causation generally is a question of fact for the jury. *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 237 (5th Cir. 2003). While proof of causation requires more than conjecture or guess, it need not be supported by direct evidence. *Id.* Reasonable inferences from circumstantial evidence may form a sufficient basis for a finding of causation. *Tompkins v. Cyr,* 202 F.3d 770, 782 (5th Cir. 2000). Establishing causation requires facts sufficient for a jury to reasonably infer that the defendants' acts were a substantial factor in bringing about the injury. *Id.*

Having reviewed the summary judgment record, the Court finds that there is enough evidence for a jury to find that the alleged manufacturing and design defects were a producing or proximate cause of Chandler Jackson's death.

In addition to the various expert opinions regarding causation and design defect and other fact witness testimony, the Court finds the following pieces of summary judgment evidence to be exemplary of the pieces of evidence creating fact issues for a jury, not this Court, to weigh and resolve in determining Defendants' liability, if any, here:

- Matthew Davis's testimony about hearing a loud snap and cries for help, and discovering

- Chandler laying down with a bleeding puncture in his neck. *See* Dkt. 172-19 at depo pages 17-19.

- Angela's Davis's testimony regarding hearing a scream for help and finding Chandler with blood rising up out of his neck. *See* Dkt. 172-20 at depo pages 18-25.

- Michael Hogancamp's testimony regarding hearing Chandler's calls for help, finding Chandler on the group with a puncture to his neck, applying a towel to the puncture, and noticing the broken golf club within two feet of Chandler's body. *See* Dkt. 172-33 at depo pages 12-23.

- Michael Hogancamp's testimony that the hole in Chandler's neck was "almost exactly" consistent in size with the diameter of the golf club. *See* Dkt. 172-33 at depo page 23.

- The medical examiner's testimony that Chandler's death was "due to sharp force injury, which was the result of an impalement" and that it was more probable than not that it was a golf club that penetrated his body. *See* Dkt. 172-29 at depo pages 11 and 15-16. The medical examiner's testimony that the metal ends of the golf clubs found next to Chandler were ragged, the portion that contained the head of the club had embedded bloody tissue on it, and the other portion had blood on the shaft but not the end. *See* Dkt. 172-29 at depo pages 13-14.

- Dr. Jerner's testimony regarding the metallurgical and chemical testing of the shaft and his opinion that there were deficiencies and manufacturing defects in the steel that caused it to break. *See* Dkt. 172-2 and Dkt. 172-12.

- Jamie Galis's design analysis regarding the golf clubs indicating that the clubs could fracture into two sharp pieces when a "sufficient bending force is applied." *See* Dkt. 172-13.
- Testimony regarding the extent of testing done by FEMCO, the manufacturer of the clubs, prior to manufacturing them, the extent of testing done by USKG before selling the clubs, and testimony that FEMCO did not know the ultimate use of the club as being for children. *See* Dkts. 172-22, 172-23, 172-24, 172-25

While Defendants may show through cross-examination or other credibility attacks that they are not liable for Plaintiffs' claims, there are simply too many fact issues as to causation to find that Defendants are entitled to summary judgment here. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847-48 (5th Cir. 1992) ("Summary judgment is rarely appropriate in negligence and products liability cases, even if the material facts are not in dispute... the evidence requires that a jury balance the breadth and force of the warning that the manufacturer provided – if it even did so – against the nature and extent of the risk."). Plaintiffs have sustained their summary judgment burden as to causation.

Finding that Plaintiffs have created a genuine issue of material fact as to their negligence claims, the Court next turns to Defendant U.S. Kids Golf's arguments regarding Plaintiff's express warranty and misrepresentation claims. According to Plaintiffs' Fourth Amended Complaint, "[t]he evidence will likely show these Defendants made express warranties and representations as to the product in question regarding safety, quality, utility, strength, longevity, and freedom from defects; and breach such express warranties by manufacturing, marketing, and placing the product in question into the stream of commerce." Dkt. 132 at 9. Similarly, in Plaintiffs' "misrepresentation" claim,

they allege Defendants made representations that the "golf clubs and shafts were designs and manufactured to the highest levels and safe for the use by children of all ages." Dkt. 132 at 10.

In its summary judgment motion, Defendant U.S. Kids Golf argues that Plaintiffs' express warranty and misrepresentation claims should be dismissed because U.S. Kids Golf made no express oral or written warranty to Plaintiffs as to safety, design, testing and manufacture of the clubs. In his deposition, when asked why he purchased U.S. Kids Golf clubs for his son, Rick Jackson testified:

> I asked some salesclerk, and I believe maybe some other people. But I said, Hey, I want to get my kid the best clubs I can get for – you know, the best. And they said U.S. Kids, and there was a chart there that talked, you know, all about those clubs. And all that kind of stuff, and that they were good and, I'm sure, safe, or whatever, and would help his game or whatever. And it was – I wanted him to have the best clubs.

*See* Dkt. 172-21, at page 65 of deposition.

Plaintiffs also submit as part of their summary judgment record U.S. Kids Golf sales material, which includes a fit chart of clubs for kids divided for height and skill level. *See* Dkt. 172-32. Those materials purport to "[fit] kids at every stage of their growth and development - from beginner to intermediate to advanced." *Id*. The materials further claim that the U.S. Kids Golf clubs are "designed in every way for kids," including having "lighter weight," "flatter lie angles," "flexible lightweight shafts," and "slender grips." *Id*.

To recover for the breach of an express warranty under Texas law, a plaintiff must show that a seller made a representation or promise "which relates to the goods and becomes part of the basis of the bargain ..." TEX. BUS. & COM. CODE § 2.313. Here, Plaintiffs have not pointed to any express

statements by Defendants, nor can the Court identify any references in the sales materials, to the safety of the clubs. Nor have Plaintiffs alleged how any of the express promises about the clubs weight or flexible design were breached. Jackson's testimony alone is insufficient to create a genuine issue of material fact as to any express warranty regarding safety – it, without any other evidence or showing by Plaintiffs, only shows that when Jackson asked for the "best clubs," he believes the salesman, or others present at the store, meant the USKG clubs offered were "safe, or whatever."[1] Therefore, the Court finds that Plaintiffs have not satisfied their burden as to their breach of express warranty and misrepresentation claims and summary judgment should be granted for Defendants as to those claims. *See Bryant v. Giacomini, S.p.A.*, 391 F. Supp.2d 495, 504 (N.D. Tex. 2005) (granting defendant summary judgment where the representations could not be construed as an express warranty and plaintiffs failed to point to evidence of express warranty in record).

While the Court grants Defendants summary judgment as to Plaintiffs' express warranty and misrepresentation claims, it is not convinced that Defendants are entitled to summary judgment on Plaintiffs' breach of implied warranty claims. In their Fourth Amended Complaint, Plaintiffs also claim that the evidence will likely show these Defendants breached the implied warranty of merchantability found in Section 2.314 of the Texas Business and Commerce Code and the implied warranty of fitness for a particular purpose found in Section 2.315 of the Texas Business and Commerce Code.

---

[1]The Court notes that Plaintiffs cite to Dan Van Horn's deposition testimony as evidence of the express and implied warranties here. However, Plaintiffs do not cite to any page numbers in the deposition, nor do they show how any such express representations were made to Plaintiffs here.

Section 2.314 creates an implied warranty that the goods shall be merchantable such that the goods: "(1) pass without objection in the trade under the contract description; (2) in the case of fungible goods, are of fair average quality within the description; (3) are fit for the ordinary purposes for which such goods are used; (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (5) are adequately contained, packaged, and labeled as the agreement may require; and (6) conform to the promises or affirmations of fact made on the container or label if any." TEX. BUS. & COM. CODE § 2.314. Section 2.315 creates an implied warranty that the clubs shall be fit for a particular purpose "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." TEX. BUS. & COM. CODE § 2.315.

Contrary to Defendants' assertions, the Court finds Plaintiffs have created a genuine issue of material fact regarding whether the clubs were suitable or fit for use by children. The sales materials offered by Plaintiffs indicate that the clubs were marketed specifically for use by children of varying skill levels. The Court finds that Rick Jackson's testimony and the testimony of FEMCO and USKG representatives in the summary judgment record leave it for the jury to determine whether suitable and foreseeable use of the clubs would include possible improper use or misuse by a child golfer.

Defendants argue that Plaintiffs' action for breach of the implied warranty of merchantability are barred by Plaintiffs' strict liability claim pursuant to the Texas Supreme Court's decision in

11

*Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661 (Tex. 1999). The Court is not convinced.

In that case, the Texas Supreme Court affirmed the trial court's refusal to submit both the issue of strict liability and the issue of breach of implied warranty to the jury because the breach of implied warranty of merchantability claim and strict liability claim involved an "identical factual determination." *Id*. at 666. Here, the record creates a genuine issue of material fact regarding whether Plaintiffs' breach of implied warranty and strict liability claims are "functionally identical," and the facts and pleadings before the Court create the possibility that some defects alleged related "only to [Plaintiffs'] strict liability claim and some only to [Plaintiffs'] breach-of implied warranty claim." *Id.* at 665.

Moreover, the Court notes that in upholding the trial court's refusal to submit both strict liability and breach of the implied warranty, the *Hyundai* Court noted the need to balance the trial court's obligation to "obtain fact findings on all theories pleaded and supported by evidence" and the need to avoid confusing "the jury by submitting differently worded questions that call for the same factual finding." *Id.* at 665-66. In fact, in *Hyundai*, the trial court considered all the evidence presented at trial before determining that the issues of both strict liability and breach of implied warranty could not be submitted to the jury. Accordingly, the Court finds that, at the very least, the summary judgment phase is not the proper juncture to consider Defendants' arguments and that Defendants' can re-urge the issue and the implications of *Hyundai* once all of the evidence has been submitted to the jury. At this time, therefore, summary judgment as to those claims should be denied.

Defendants have also argued that Plaintiffs' claims of violations of the federal and state hazardous substances acts are not supported by the facts. Plaintiffs have asserted a claim for "statutory violations" under Section 501.002 of the Texas Health and Safety Code and the Federal Hazardous Substances Act,15 U.S.C. §1261. Defendants argue that there is no private cause of action under this statute, and, even if the provision created a private right, Plaintiffs have offered no evidence that USKG violated such standards. The Court agrees that the federal provisions do not provide a private cause of action, nor has Plaintiff cited to any Texas case law (nor could the Court identify any) permitting a private claim under Texas's hazardous substances provisions. *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 373 (5th Cir. 2002) ("The FHSA does not authorize a private cause of action."). Moreover, even if there were private remedies available for such statutory violations, the Court is not convinced (and Plaintiffs have not shown in their summary judgment response) that the subject golf clubs are hazardous materials that would fall under the statutes.[2] Therefore, Defendants are entitled to summary judgment on Plaintiffs' claims of "statutory violations."

Because the Court was able to address the parties' positions without any additional argument from the parties, Plaintiffs' request for oral hearing is denied.

---

[2] Section 501.002(a)(2) of the Texas Health and Safety Code, for example, limits its definition of hazardous substance toys as "a toy or other article, other than clothing, that is intended for use by a child and that presents an electrical, mechanical, or thermal hazard." 15 U.S.C. § 1261(f)(1)(D) provides an essentially identical definition for hazardous toy under the Federal Act. Plaintiffs have not shown how the clubs here would fall under these definitions.

For the reasons set forth above, the Court finds that Defendants/Third Party Defendants FEMCO Steel Co. and Far East Machinery Co.'s Motion for Summary Judgment Against Plaintiffs (Dkt. 154), Defendant/Third Party Plaintiff U.S. Kids Golf, LLC's Motion for Summary Judgment Against Plaintiffs (Dkt. 156), and Defendant/Third Party Plaintiff U.S. Kids Golf, L.L.C.'s Supplemental Motion for Summary Judgment Against Plaintiffs (Dkt 198) should be GRANTED as to Plaintiffs' claims of breach of express warranties, misrepresentation, and statutory violations and should be DENIED as to all other claims.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 5th day of March, 2009.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE